UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PATRICK BRITTMAN, | |
| Plaintiff, | No. 14 C 10138 |
| v. | Judge Thomas M. Durkin |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Patrick Brittman brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying Brittman's claim for Supplemental Security Income benefits based on a disability to his right ankle. Brittman has filed a motion for summary judgment. R. 17. For the following reasons, that motion is granted and the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion and order.

**Legal Standard**

A court reviews the Commissioner's factual findings to determine whether they are "supported by substantial evidence." 42 U.S.C. § 405(g). Thus, a court "will uphold the Commissioner's decision if it is supported by substantial evidence and is free of legal error." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). The Supreme Court has defined substantial evidence as "more than a mere scintilla. It

means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

"When reviewing for substantial evidence, [courts] do not displace the [administrative law judge's] judgment by reconsidering facts or evidence or making credibility determinations." *Castile v. Astrue,* 617 F.3d 923, 926 (7th Cir. 2010). "The [administrative law judge] is not required to mention every piece of evidence but must provide an 'accurate and logical bridge' between the evidence and the conclusion that the claimant is not disabled, so that 'as a reviewing court, we may assess the validity of the agency's ultimate findings and afford [the] claimant meaningful judicial review.'" *Craft,* 539 F.3d at 673 (quoting *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004)). "Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight." *Zurawski v. Halter*, 245 F.3d 881, 888 (7th Cir. 2001).

## Analysis

### I. Listing Impairment 1.02

Social Security regulations require the Administrative Law Judge ("ALJ") to determine whether the claimant's impairment is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d), 416.925, and 416.926). The ALJ in Brittman's case considered whether the condition of Brittman's right ankle met the

2

requirements of listing number 1.02 describing a "Major Dysfunction of a Joint."

That listing provides the following in relevant part:

> Major dysfunction of a joint(s) . . . [is] [c]haracterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankyloses, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s). With: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . . .

20 C.F.R. § Pt. 404, Subpt. P, App. 1, listing 1.02A. An inability to ambulate is defined as

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.
>
> To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home

3

>without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, listing 1.00B2b(1), (2). The entirety of the ALJ's application of this listing is as follows:

> [Brittman's] degenerative disease was considered under listing 1.02, *Major Dysfunction of a Joint*. However, there is no evidence of involvement of one major peripheral weight-bearing joint resulting in an inability to ambulate as required under listing 1.02A. Clearly, [Brittman] is able to ambulate as demonstrated during the consultative exam with Dr. Patil. It is also notable that none [Brittman's] treating notes show [him] having any difficulty with ambulation.

R. 13-1 at 15.

Application of listing 1.02A requires analysis of whether the claimant suffers from both (1) "major dysfunction of a joint," and (2) an "inability to ambulate effectively." The ALJ found that the condition of Brittman's ankle did not meet listing 1.02 because Dr. Patil, the consulting examining physician, determined that Brittman was able to ambulate effectively. The ALJ, however, failed to address evidence that is contrary to Dr. Patil's diagnosis. For instance, Brittman told his doctors that he relies on a cane to walk long distances and a walking boot to reduce pain. R. 13-1 at 203. Dr. James M. McKenna, M.D., another consulting physician who reviewed Brittman's records, testified at the hearing that the condition of Brittman's ankle would cause him to experience a "decreased ability to negotiate irregular terrain." *Id.* at 53. This evidence could form a sufficient basis for the ALJ to find that Brittman meets listing 1.02A.

Moreover, the ALJ seemingly ignored evidence undermining Dr. Patil's diagnosis that Brittman is able to ambulate effectively. Dr. Patil failed to review Brittman's 2009 x-ray. Dr. McKenna testified that Dr. Patil's diagnosis would have been different had he reviewed the x-ray. R. 13-1 at 49. Dr. McKenna also acknowledged that a person with Brittman's condition would have "good days and bad days," and that the one hour examination Dr. Patil conducted might not be sufficient to properly diagnosis Brittman's condition. *See* R. 13-1 at 50-51. In particular, Dr. McKenna testified that the results of Dr. Patil's examination were surprising considering the evidence of Brittman's x-ray. Based on the incongruence between Brittman's x-ray and Dr. Patil's diagnosis, Dr. McKenna testified, "So I'm actually amazed at the situation, and in some instances I'm a little paranoid. I'm hoping that [Dr. Patil] did indeed do a thorough exam and that he didn't put in imaginary findings and rough, run through it and give him a (INAUDIBLE)." R. 13-1 at 51. Although the conclusion of Dr. McKenna's testimony was not recorded, he clearly felt there was a basis to question Dr. Patil's diagnosis. The ALJ failed to consider whether Dr. McKenna's criticisms of Dr. Patil's diagnosis served to discredit it. The Court finds that the ALJ's decision is not based on "substantial evidence" because it was based solely upon Dr. Patil's diagnosis, but there is evidence in the record that undermines that diagnosis that the ALJ did not address.

Should the Commissioner determine upon reconsideration that Brittman can ambulate effectively, there is ample evidence that Brittman's meets the other element of listing 1.02, i.e., that he suffers from "major dysfunction" of his right

5

ankle. For instance, the 2009 x-ray of Brittman's ankle is evidence of "major dysfunction of the joint." That x-ray showed an "almost total loss of architecture of the joint," "marked irregularity of the cortical margin of the calcaneus bone with mottled calcification," and "diminished joint space." R. 13-1 at 189. This physical evidence is also accompanied by Brittman's reports of chronic pain and stiffness during examinations by doctors on May 14, 2011; May 19, 2011; August 25, 2011; and September 29, 2011. *Id.* at 200-06. Dr. McKenna confirmed that Brittman's ankle is "quite . . . abnormal" and would be associated with reports of pain. R. 13-1 at 52. The notes from Brittman's treatment visits also show that his ankle has a reduced range of motion. *Id.*

Therefore, the ALJ's decision must be remanded for reconsideration of the full record as it is relevant to whether Brittman's condition meets a listing impairment.

## II. Residual Capacity to Perform Work

Since a finding that Brittman's condition equals a listing impairment is sufficient to determine that he is "disabled," *see Curvin v. Colvin*, 778 F.3d 645, 649 (7th Cir. 2015), it is unnecessary to address the ALJ's finding that Brittman had residual capacity to perform work, which also resulted in a denial of benefits to Brittman. However, the evidence the Court reviewed in this opinion and order is also relevant to the analysis of whether Brittman can perform any work. Upon reconsideration, should the Commissioner again determine that the condition of Brittman's ankle does not meet listing 1.02, the Commissioner should reconsider

the finding that Brittman has a residual capacity to perform work in light of the Court's evaluation of the evidence.

## Conclusion

For the foregoing reasons, Brittman's motion, R. 17, is granted and the Commissioner's decision is reversed and remanded for further proceedings consistent with this opinion and order.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated:  November 21, 2016